SAMUEL B. ILLINGWORTH et al.

*v.*

HENRY J. BLOEMECKE et al.

[Filed July 25th, 1904.]

A court of equity will not decree specific performance nor order an accounting which will serve only to aid the complainants to secure the proceeds of Sunday racing, an unlawful business, prohibited by law.

On bill for accounting and receiver.

*Messrs. Leber & Shotland,* for the complainants.

*Messrs. Riker & Riker,* for the defendants.

BERGEN, V. C.

The complainants are some of the stockholders of the New Jersey Bicycle Track Company and exhibit their bill for the

purpose of compelling the Essex County Amusement Company, Henry J. Bloemecke and Charles B. Bloemecke, to account for moneys received for the New Jersey Bicycle Track Company since May 7th, 1897, and for the appointment of a receiver to manage the affairs of the New Jersey Bicycle Track Company, with power to collect all moneys received by the Essex county company from rentals paid by the lessees of the property in the possession of the New Jersey company during the bicycle racing seasons of the years 1900 and 1901. The testimony shows that the Newark Amusement Company were the lessees of a considerable tract of land at Vailsburg, near the city of Newark, held by it as tenant under a lease for the term of five years from October 1st, 1895, with the right of a renewal for a like period; that the complainants, together with Henry J. and Charles B. Bloemecke, organized a corporation under the laws of this state called "New Jersey Bicycle Track Company" for the purpose mainly of owning and controlling bicycle tracks and the carrying on the business of holding bicycle racing meets. After the incorporation of this company an arrangement was made, the terms of which are in dispute between the bicycle company and the amusement company, the complainants insisting that Henry J. Bloemecke and his brother Charles, who were the principal owners and in absolute control of the Newark Amusement Company, had agreed, for the amusement company, to sublet to the bicycle company a portion of the land above mentioned. Exactly what took place during the negotiations it is very difficult to determine owing to the great conflict in the testimony; it is certain, however, that while there was no written lease it was understood by the persons interested that the amusement company was to lease to the bicycle company a sufficient portion of its leasehold property to afford the bicycle company an opportunity to build a proper track for bicycle racing and that the term of such lease was to cover the period named in the lease to the amusement company; the only written evidence was an agreement by the amusement company that it would execute a lease to the bicycle company, the term to be for the period covered by its lease, the rent to be $1 a year "and other privileges;" this agreement was

signed by Charles B. Bloemecke as manager of the amusement
company, and on the hearing it was contended that his position as
manager did not imply the power to execute a lease, and that,
on the contrary, it appeared that he had no such power.    I am
of the opinion, however, that his action was sufficiently ratified
to make it binding; the agreement for the lease was executed
and delivered at the urgent request of some of the stockholders
of the bicycle company, and it was presumably under this agree-
ment that the officers of the amusement company permitted the
bicycle company to take possession of and expend about $8,000
in the construction upon the land of permanent improvements,
necessary to carry on the proposed enterprise.    Henry J.
Bloemecke was an officer of the bicycle company and charge-
able with notice of the character of the agreement under which
it was expending money; he was also an officer of the amusement
company, and, knowing of the agreement made by his brother,
it was his duty to warn the bicycle company that they were
expending their money on the land of the amusement com-
pany without such a written consent as would justify their
entry on the land.    The real controversy in this cause arises
over the construction of this agreement, which is in the following
words:

"This is to certify that the Essex County Amusement Company do
bind themselves to have a lease executed to the New Jersey Bicycle
Track Company, same to be drawn by McCarter, Williamson & McCarter,
for grounds to be occupied by them located adjoining shooting park,
in the borough of Vailsburg, New Jersey, term of lease to be same as
held by them from G. Kreuger, owner, consideration being one dollar,
and other privileges agreed upon."

The complainants claim that their company is entitled
to the use, every day in the week, of the property leased to it,
while the defendants insist that it was not contemplated nor
agreed that the bicycle company could have the use or posses-
sion of the property on Sunday, and that when the agreement
was made, Sunday racing was forbidden by the rules of the
League of American Wheelmen, under whose auspices alone
all such racing was carried on, and that the words "other

privileges" contained in the agreement for a lease were intended to mean, among other things, that the amusement company should have the right to make such use as it chose on Sunday of the lands used by the bicycle company on the other six days of the week. Before fully considering this question, I will take up and dispose of certain other charges set out in the bill of complaint, as follows: (1) That a chattel mortgage was made by the bicycle company to Henry J. Bloemecke for $6,492.48, for which the company received no consideration. The testimony very clearly shows that the complainants are mistaken and that the money, the payment of which was secured by this chattel mortgage, was paid out for the benefit of the company. (2) That in January, 1902, the officers of the bicycle company paid to Henry J. Bloemecke $1,767.67 for repairs to the track and for interest on moneys borrowed. The complainants insist that this payment was improperly made, but the evidence shows to my satisfaction that the money was paid out for the benefit of the bicycle company, and that it was proper that it should be returned to the person who advanced it. (3) That the officers of the company improperly paid $1,000 as a yearly salary to the manager of the company. I cannot find from the evidence that this was an improper expense; it was shown that services had been rendered, and it does not appear to me that the officers of the company were exercising their discretion in an improper or unlawful manner when they made this payment. (4) That $125 was paid to counsel in January, 1902, for services rendered the company during the previous year. No serious attempt was made on the hearing to show that the compensation to counsel was improper or excessive. I therefore find against the complainants on the four several matters last mentioned.

There remains to be considered two questions which arise under the first branch of the case, viz., should a specific performance of the agreement for a lease be decreed and are the complainants entitled to an accounting? In considering the first proposition, we should bear in mind that specific performance is not a matter of right, but of sound judicial discretion.

and will be allowed or refused, as the equities of the parties in each case require. *Ten Eyck* v. *Manning, 52 N. J. Eq.* (*7 Dick.*) *47.* The agreement, performance of which is here sought, binds the amusement company to have a lease executed to the bicycle company of lands sufficiently described, for a definite term, at a yearly rent of $1, and "other privileges agreed upon." Under this agreement, the bicycle company entered upon the possession of the land, expended a large sum of money in building a racing track, and has continued in possession since 1897 until, at least, May, 1902, when the bill of complaint was filed in this cause. What the complainants here complain of is not that the company of which they are stockholders is not in possession as fully and effectively as if the lease provided for had been executed, but that the officers of their company do not claim and exercise the full benefit of the contract, which by its terms covers every day in the week, for, in my judgment, the words "other privileges" cannot be interpreted to mean a reservation of a portion of the term granted, but rather some rights in the nature of rent. The bicycle company entered under a written agreement for a lease for a definite term, for a specified rent, and, to the knowledge of the lessor, have laid out considerable sums of money in improving the property. These acts, in my opinion, constitute the agreement to lease—a valid lease between the parties for the term therein named. If the officers of the company will not, as the complainants allege, enforce its rights under these circumstances against its lessor, a decree for specific performance would in no way urge these delinquent officers to a more active performance of their duties. It is very clear, from the testimony in this cause, that what these complainants seek is not the aid of this court so far as the secular days of the week are concerned, but to be afforded an opportunity, by a decree of this court, to participate in the profits from Sunday racing—in fact, there is nothing else in dispute between these parties. The amusement company admits the right of the bicycle company during six days of the week, but insists that according to the agreement Sundays were reserved. In this contention they are supported, fraudulently, it is said, by the officers.

in charge of the company in which these complainants are stockholders, and as the decree of this court would serve no purpose other than aiding the complainants in their effort to avail themselves of the proceeds of an unlawful business, namely, Sunday racing, a case is not presented in which a court of equity should interfere. If the officers of the complainants' company, in refusing to retain for the benefit of their corporation all the proceeds of the Sunday racing, are committing a wrong to the injury of these complainants, they can be compelled to account, if legally or equitably responsible, to the complainants in the premises.

The remaining question to be determined is, are the complainants entitled to an accounting? It appears that when the agreement was first made and the track built the rules of the American League of Wheelmen proscribed Sunday racing, in consequence of which persons who were engaged in the public exhibition of racing with bicycles were not allowed, under threatened disbarment, to engage in the display of their acquirements on Sundays, and that this condition of affairs continued until some time in the year 1899, when another association was created, which permitted Sunday racing; that previous to this time the business of the bicycle company was a failure, and after that date, Sunday racing being permitted, the business became remunerative. About this time the Bloemeckes, being in control of both companies, demanded from the bicycle company, on behalf of the amusement company, a certain percentage of the Sunday earnings, claiming that the rent reserved in the original agreement did not cover the use of the grounds on Sunday. In this demand the persons in control of the bicycle company acquiesced, and on the hearing it was admitted that the sole accounting required by the complainants is of the money derived from Sunday racing which was paid over to the amusement company. The question thus presented is, will this court reach out its hand and divide the money derived from an unlawful business between a party of wrong-doers? The answer to this question must be in the negative. The business out of which this money arose is prohibited by the law of this state, and the penalty is a fine, and if the fine be not paid, imprisonment. On

the argument it was insisted that the court was not being asked to enforce the contract, but only to compel a distribution of the profits. This proposition has been disposed of, against the contention of these complainants, in *Watson* v. *Murray, 23 N. J. Eq. (8 C. E. Gr.) 257, 261.* No court will lend its aid to one who founds his cause of action upon an illegal act. *Pennington* v. *Todd, 47 N. J. Eq. (2 Dick.) 569.* This cause of action is based upon the transgression of a positive law of the state, and the policy of our courts has been to render such transactions as precarious and difficult as possible. In the cause under consideration no question of innocent parties arises. The complainants are stockholders in a company engaged in Sunday racing exhibitions for profit; the dispute is over the distribution of these profits, the result of an illegal business carried on by these complainants through their officers and agents, and an effort by these complainants to prevent a violation of the law of this state by their officers would be more commendable than this attempt to secure a portion of the proceeds of an unlawful business, and would, we have a right to presume, result in the suppression of the business and the removal of the cause of dispute.

I will advise a decree dismissing the bill of complaint.