GUNDAKER CENTRAL MOTORS, INC., PLAINTIFF-RE-
SPONDENT, v. FREDERICK J. GASSERT, Jr., DIRECTOR
OF DIVISION OF MOTOR VEHICLES, *ETC.*, DEFENDANT-
APPELLANT, AND BOROUGH OF BELMAR, *ETC.*, DE-
FENDANT.

(Monmouth County action).

JEROME D. HABER, TRADING AS AJAX MOTORS, AND
JOHN SLAMAN, TRADING AS CAPITOL AUTO SALES,
PLAINTIFFS-RESPONDENTS, v. FREDERICK J. GAS-
SERT, Jr., INDIVIDUALLY AND AS DIRECTOR, DIVI-
SION OF MOTOR VEHICLES, *ETC.*, DEFENDANT-APPEL-
LANT, AND ANGELO DE ROSE, *ETC.*, *ET ALS.*, DE-
FENDANTS.

(Bergen County action).

Argued November 13, 1956, November 19, 1956 and
December 10, 1956—Decided December 17, 1956.

Mr. *John F. Crane,* Deputy Attorney-General, argued the cause for the appellant Frederick J. Gassert, Jr., Director of Division of Motor Vehicles (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

Mr. *Albert S. Gross* argued the cause for the respondents Jerome Haber and John Slaman (*Mr. Nelson G. Gross,* on the brief).

Mr. *Ward Kremer* argued the cause for the respondent Gundaker Central Motors, Inc.

Messrs. *Gilhooly, Yauch & Fagan* filed a brief as counsel for New Jersey Automotive Trade Association *amicus curiae* (*James E. Fagan,* of counsel; *Daniel A. Degnan* and *Martin Kesselhaut,* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J. This is a consolidated appeal from judgments of the Law and Chancery Divisions of the Superior Court holding unconstitutional statutes that require car dealers to close on Sunday and providing penalties for failure to do so. We certified the matter on our own motion pursuant to *R. R.* 1:10–1(*a*) because it is concerned with the constitutionality of statutes dealing with an important matter of public policy and further because it indicates some serious misconceptions as to the effect of our decision in *State v. Fair Lawn Service Center,* 20 *N. J.* 468 (1956).

The question here raised is whether a law which singles out automobile dealers and prohibits their business operations on Sunday is a constitutional exercise of power by the State.

The action in the *Gundaker* case was by suit in lieu of the prerogative writ of *certiorari* in the Law Division, Monmouth County, attacking the constitutionality of *chapter* 254 of the *Laws of* 1955 (approved December 28, 1955). The action in the *Haber* case was commenced in the Chancery Division, Bergen County, seeking a declaration of the unconstitutionality of not only *chapter* 254 of the *Laws of* 1955, but all of *chapter* 253 as well.

*Chapter* 254 of the *Laws of* 1955 (*N. J. S.* 2*A*:171–1.1 *et seq.*) in essence prohibits dealing in new or used cars on Sunday and holds that persons who do so in violation of the act are disorderly persons and subject to a fine or imprisonment or both. It also provides for an additional penalty by way of suspension or revocation of the car dealer's license to engage in that business required by *chapter* 10 of *Title* 39 of the *Revised Statutes.* This statute was enacted as an entirely new provision and a supplement to *chapter* 171 of *Title* 2*A* of the *New Jersey Statutes.*

*R. S.* 39:10–20, prior to its amendment by *chapter* 253 of the *Laws of* 1955, provided for the suspension and revocation of a car dealer's license after hearing for certain violations of the law and misconduct. The new act merely amended the statute by including in the causes for suspension or revocation "final conviction of the licensee for violating

any provisions of *Chapter* 171 of *Title* 2A or of any supplement thereof (Observance of Sabbath Days)."

The facts in both cases are not substantially in dispute.

The plaintiff in the *Gundaker* case is engaged in the operation of a new and used automobile business in Belmar, Monmouth County. It had been its practice for many years to keep open on Sunday and to conduct business on that day just as on any other day in the week. Sunday was its biggest business day; the plaintiff claims that it sold more cars on that day than it sold on any other single day of the week and will now be caused to lose substantial revenues. In keeping open on Sunday, it was no different than many other businesses in the communities surrounding Belmar. Real estate offices, 5 and 10 cent stores, antique shops and motor boat agencies all keep their doors open for "business as usual" on Sunday.

Just prior to the enactment of the statutes in question here, competitive conditions in the automobile sales business were causing many dealers to remain open on Sundays as a matter of self-preservation to obtain a share of the available trade. These places of business were generally open 12 to 13 hours a day during the week and 8 to 9 hours a day on weekends. Hours of work of the sales personnel engaged by these dealers ranged from 60 to 77 hours per week, and the prevalence of a commission system of compensation for these salesmen tended to cause them to work long hours without adequate time off for recreational purposes.

It also appears that of the approximate 1,100 automobile dealers selling new and used cars in this State, about 900 of them are members of the New Jersey State Automotive Trade Association. In the fall of 1954, evidently for the purpose of alleviating existing conditions in the industry, this group caused a poll to be taken of its members on the subject of Sunday closing. The ballots received from 80.3% of the members showed overwhelmingly that the group were in favor of Sunday closing; 77.4% of those voicing their opinion voted in favor of it. Based upon this expression by its members, the Association had its counsel draft a bill

providing for closing of automobile agencies on Sunday. Whether this bill was enacted in the form suggested, without amendment, does not definitely appear, but the court below found that the bill was enacted into law.

After the enactment of the statutes here in issue, the plaintiff received a notice from the Belmar Police Department that it would have to close on Sunday according to the direction of the law. Gundaker has complied with the law ever since and brought this action to test the constitutional propriety of the main enactment, *L.* 1955, *c.* 254.

After trial, the court below was of the opinion that the statute, *L.* 1955, *c.* 254, was unconstitutional, that it

"was not enacted to protect a basic interest of society such as general health, safety, morals or welfare of the people, but rather * * * had as its predominant purpose a measure of control of competition in the sale of new and second-hand automobiles in this State."

and as such it said: "It constitutes a perversion of the police power and violates both the State and Federal Constitutions." The trial court saw nothing connected with the keeping open of automobile agencies on Sunday that could fairly be said to constitute a danger or hazard to public health, morals, safety or welfare sufficient to justify a separate classification for this type of endeavor, and found the classification illusory and unreasonable and that the statute denied to the plaintiff and other automobile dealers equal protection of the laws guaranteed by our Constitutions.

In the *Haber* case the plaintiffs are automobile dealers in South Hackensack and Little Ferry, Bergen County. Their complaint in substance is similar to that in the *Gundaker* suit, except that in this suit the attack was levied at "all portions" of both laws. But unlike the other case it was disposed of on cross-motions for summary judgment. In this case the Director of Motor Vehicles took the position that the traffic on state highways on Sundays, and here particularly Route 46 as it runs through Little Ferry and South Hackensack, N. J. between the hours of 12:00 noon and 10:00 P. M. was unusually heavy and that the activity

of motorists driving off the highway to the places of business of these car dealers and then back on to the road again constituted a constant and serious traffic hazard and increased the risk of collision during this period.

The trial court, without opinion, undertook to declare unconstitutional in its entirety not only *L.* 1955, *c.* 254 but also *L.* 1955, *c.* 253, without considering whether the latter enactment might have had any validity and effect apart from any dependence upon the other act.

On this appeal the New Jersey Automotive Trade Association has been permitted to intervene as *amicus curiae* and has filed a brief supporting the position of the Director of the Division of Motor Vehicles and the other appellants here.

The Director of Motor Vehicles contends that these statutes represent a valid exercise of the prerogatives of the Legislature in the fields of public health, welfare and safety; that the long hours of work forced by the competitive conditions furnish a basis for regulation of this particular field of endeavor; that the traffic hazard created by these businesses being open during the heavy traffic on Sunday afternoons presents a reasonable basis for regulation; that the trial court attributed to the Legislature a motive in the enactment of these laws which was not apparent from the enactment and was based on elements that were in no way binding or conclusive in their indication of the true purpose of the Legislature; and that notwithstanding our decision in *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468 (1956), the statute remained effective as a declaration of the public policy of the State with regard to Sunday closing. He also urges that the statutes are not unconstitutional in a discriminatory sense because there is reasonable basis for legislating against the Sunday operations of these car dealers and no car dealers have been excluded from the operation of the statute; that by forcing the closing on Sunday of all persons engaged in the sale of new and used cars no person in that business in this State has been adversely affected from an economic standpoint; that no harm has been caused

to the plaintiffs; and that, therefore, they have not been deprived of equal protection of the laws.

The principal position of the plaintiffs is that the mere fact that these statutes ban the sale of motor vehicles on Sunday without similarly banning the sale of all other goods, makes them discriminatory, unreasonable and violative of the Federal and our State Constitutions. They also assert that there is nothing in the activity here involved so affected with the public interest as to render it susceptible to the exercise of the State's police power. It is further argued that the statute was economic in nature and born of an "unholy alliance" between the Trade Association and the Legislature.

These are in no way novel contentions, nor is the applicable law unfamiliar.

██ The State has the power, in the interests of the common good, to enact all manner of laws reasonably designed for the protection of the public health, welfare, safety and morals. The exercise of the power may cause individual hardship or even limit the freedom of individual action; but so long as there is some degree of reasonable necessity to protect the legitimate interests of the public, and the regulation resulting from the use of the power is not arbitrary or oppressive, the greater good for the greater number must prevail and individual inconveniences must be suffered as the price to be paid for living in a well-ordered society, *Kovacs v. Cooper,* 336 *U. S.* 77, 69 *S. Ct.* 448, 93 *L. Ed.* 513, 10 *A. L. R. 2d* 608 (1949), rehearing denied 336 *U. S.* 921, 69 *S. Ct.* 638, 93 *L. Ed.* 1083 (1949); *New Jersey Good Humor, Inc., v. Board of Commissioners of Borough of Bradley Beach,* 124 *N. J. L.* 162 (*E. & A.* 1939); *Reingold v. Harper,* 6 *N. J.* 182 (1951); *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405 (1952); *cf. Stillman, "Police Power in New Jersey,"* 50 *N. J. L. J.* 205 (1927). Mr. Justice Holmes, in *Noble State Bank v. Haskell,* 219 *U. S.* 104, 31 *S. Ct.* 186, 188, 55 *L. Ed.* 112, 32 *L. R. A., N. S.,* 1062 (1911) mentions that this power

"* * * may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

In *Kovacs v. Cooper, supra,* the Supreme Court of the United States (in affirming our former Court of Errors and Appeals which in turn affirmed our former Supreme Court, see 135 *N. J. L.* 64 and 135 *N. J. L.* 584) said:

"The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquillity of a community. A state or city may prohibit acts or things reasonably thought to bring evil or harm to its people." 336 *U. S.*, at *page* 83, 69 *S. Ct.*, at *page* 451.

■ But the police power may not be exercised so as to be repugnant to the fundamental constitutional rights guaranteed to all citizens, *Schmidt v. Board of Adjustment of City of Newark, supra,* 9 *N. J.* 405, 414 (1952). Significantly, Mr. Justice Harlan said in *Connolly v. Union Sewer Pipe Co.,* 184 *U. S.* 540, 558, 22 *S. Ct.* 431, 439, 46 *L. Ed.* 679, 689 (1902):

"But as the Constitution of the United States is the supreme law of the land, anything in the Constitution or statutes of the states to the contrary notwithstanding, a statute of a state, even when avowedly enacted in the exercise of its police powers, must yield to that law."

And again in *Jacobson v. Commonwealth of Massachusetts,* 197 *U. S.* 11, 26, 25 *S. Ct.* 358, 361, 49 *L. Ed.* 643, 649 (1904) that:

"According to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. * * * no rule prescribed by a state * * * shall contravene the Constitution of the United States nor infringe any right granted or secured by that instrument."

■ Accordingly, the constitutional guarantees of due process and equal protection are elements to be accounted for in the exercise of the State's police power; they are not elements that in any way limit the subjects over which the State may exercise its power, but elements which condition

the exertion of that power by their fundamental demands. In *Schmidt v. Board of Adjustment of City of Newark, supra,* 9 *N. J.* 405, 414 (1952), we pointed out that:

"* * * the guaranty of due process requires 'only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained.' *Nebbia v. [People of State of] New York,* 291 *U. S.* 502, 54 *S. Ct.* 505, 510, 78 *L. Ed.* 940 (1934)."

Moreover, "equal protection of the laws," which demands that all persons similarly situated be dealt with alike, is accomplished by the avoidance of "arbitrary discrimination between persons similarly circumstanced," *Id.,* 9 *N. J.,* at *page* 418. Thus, legislation that treats all persons within a class reasonably selected for regulation in a like or even merely in a similar manner, satisfies the mandates of the State and Federal Constitutions, *Raymond v. Township Council of Teaneck,* 118 *N. J. L.* 109 (*E. & A.* 1937); *General Public Loan Corp. v. Director of Division of Taxation,* 13 *N. J.* 393 (1953); *Guill v. Mayor and Council of City of Hoboken,* 21 *N. J.* 574 (1956). In the *Guill* case, Mr. Justice Heher took the occasion to hold for a unanimous court that:

"* * * the classification cannot be arbitrary or illusory, but must bear some just and reasonable connection with the primary object of the legislation; a particular classification is not repugnant to the Fourteenth Amendment merely because 'inequality actually results'; every classification of persons and things for regulation by law produces inequality in some degree; to vitiate the regulation the inequality must be 'actually and palpably unreasonable and arbitrary.' *Jamouneau v. Harner,* 16 *N. J.* 500, 520 (1954). See also *Van Riper v. Parsons,* 40 *N. J. L.* 1 (*Sup. Ct.* 1878); *State v. Guida,* 119 *N. J. L.* 464 (*E. & A.* 1938). It suffices if the classification have a rational and just relation either to the fulfillment of the essential legislative design or to some substantial consideration of policy or convenience bearing upon the common welfare. * * *
"* * * Classification must itself be fair and impartial and not arbitrary or illusory, grounded in material distinctions and differences concerned with the central legislative policy; and it satisfies the constitutional standard if there be any conceivable state of facts affording a just ground for the action taken, a difference of degree having material relevancy to the police policy in view." (21 *N. J.,* at *page* 583)

▇ While a measure grounded in the exercise of the police power must tend to accomplish the basic purpose of its enactment, a large measure of discretion is vested in the Legislature to determine not only what regulations are necessary to protect the public good and welfare but also the appropriate means of accomplishing these ends. Its wisdom or the means selected are not subject to review or interference by the courts except in the protection of fundamental constitutional rights, 2 *Cooley, Constitutional Limitations* (*8th ed.*), 1228–1231; *Amodio v. Board of Commissioners of Town of West New York,* 133 *N. J. L.* 220, 225 (*Sup. Ct.* 1945).

▇ Consequently, it is the duty of this court to uphold legislation unless there is no room for doubt as to its violation of constitutional provisions, *Reingold v. Harper, supra,* 6 *N. J.* 182, 194 (1951); *Schmidt v. Board of Adjustment of City of Newark, supra,* 9 *N. J.* 405, 416 (1952); *Russo v. Governor of State of New Jersey,* 22 *N. J.* 156, 170 (1956).

The statutes in question here apply to all automobile dealers within the State, without distinction as to class, type, location or otherwise. All are required to close. Fundamentally then, they satisfy the initial inquiry as to equal protection. No economic advantage can be gained by any one within this State by reason of the Sunday regulation because no persons other than those covered by the enactments can engage in the business of selling motor vehicles, *R. S.* 39:10–19. Thus, all motor vehicle dealers are protected in their businesses and no substantial loss of revenues can result where the product they deal in is unobtainable elsewhere within the State. The cars that would be sold on Sunday will now be sold on the other days in the week and probably to the same prospective purchasers.

▇ The fact that the sale of motor vehicles is singled out for legislative treatment is no ground for complaint if there is any reasonable basis for such action, *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1949); *Jamouneau v. Harner,* 16 *N. J.* 500 (1954), *certiorari* denied 349 *U. S.* 904, 75 *S. Ct.* 580, 99 *L. Ed.*

1241 (1955); *Guill v. Mayor and Council of City of Hoboken, supra,* 21 *N. J.* 583 (1956). And there is reasonable basis if the buying and selling of motor vehicles on Sunday has effects inimical to the public good and welfare. . Under the police power "the State may protect its citizens from physical and moral debasement which comes from uninterrupted labor"; see *State v. Fair Lawn Service Center, Inc., supra,* 20 *N. J.* 468, 474, 483 (1956).

In the present state of Sunday activity in this automotive age, there are sections of our highways stretching for miles almost exclusively devoted to the sale of new and used cars, where the owners and employees, forced by the unreasonable and competitive lust of some of their neighbors in the trade, are compelled to maintain their business vigil every day of the week and for long hours; who can say that this is not inimical to the public good? Moreover, common human experience has shown to all who have had the occasion to drive on the highways of this State that even a single business enterprise can constitute an insidious accident hazard when the highway on which it is situated is full with super-powered automobiles. Multiply this one instance by the number of dealers that are found, let us say, in the Little Ferry-South Hackensack area and see what the potential havoc is, to say nothing of the peace and tranquillity that is incidentally disturbed.

The State has an absolute right to enter here and force on all and every one so engaged regulations for the benefit of the public, and it is not for the court to say that its action in doing so is contrary to the constitutional provisions against discrimination merely because there are classes similarly situated with respect to public or social evils requiring similar legislation that are yet unregulated, *Raymond v. Township Council of Teaneck, supra,* 118 *N. J. L.* 109 (*E. & A.* 1937); *Hertz Washmobile System v. Village of South Orange,* 41 *N. J. Super.* 110 (*Law Div.* 1956). As we have already indicated, the Legislature has a wide range of discretion in the choice of the means and methods by which it shall enhance the public good and welfare, *Amodio*

*v. Board of Commissioners of Town of West New York, supra,*
133 *N. J. L.* 220, 225 (*Sup. Ct.* 1945).

 While it is true that if the dominant purpose of
the legislation be to serve private interests under the cloak
of the general public good, the resulting legislation is a
perversion and abuse of power and therefore unlawful,
*Reingold v. Harper,* 6 *N. J.* 182, 192 (1951), the only real
basis for the assertion of such a motive here is in the
sponsorship of the legislation in question. But the motives
of the sponsors cannot be imputed to the Legislature unless
there is basis for it in its statutory expression, *Keyport &
M. P. Steamboat Co. v. Farmers Transportation Co.,* 18
*N. J. Eq.* 13 (*Ch.* 1866), affirmed 18 *N. J. Eq.* 511 (*E. & A.*
1866); *Soon Hing v. Crowley,* 113 *U. S.* 703, 710, 5 *S. Ct.*
730, 28 *L. Ed.* 1145 (1885); 2 *Sutherland, Statutory Con-
struction* (*3rd ed.*), *sec.* 5014. We find no legal basis for
attributing any desire on the part of the Legislature to act
other than in the general public interest.

 The plaintiff, Gundaker, urges that our decision
in *State v. Fair Lawn Service Center, Inc., supra,* 20 *N. J.*
468 (1956), is dispositive of the present case. It contends
that since we held *N. J. S.* 2A:171–1 was "of no force and
effect" without a penalty clause, *id.* 473, that statute has
been "swept away by the decision in the *Fair Lawn* case";
and that since the present *chapter* 254, *Laws of* 1955 is
expressly nothing more than a supplement to the statute
there involved it can have no more vitality than the original
*chapter* 171. Its argument on this score avoids recognition
of the fact that in the *Fair Lawn* case we held the Sunday
Law only unenforceable in a criminal sense for the violation
there charged because of its lack of expression of a penalty.
This decision was never intended to strip the statute of its
effectiveness in prohibiting Sunday operations that are not
works of charity or necessity. On the contrary, while that
statute, *N. J. S.* 2A:171–1, was incapable of furnishing a
basis for the prosecution of violations such as that charged
in the *Fair Lawn* case, it remains declarative of the general
public policy of the State with respect to Sunday closing.

Moreover, the present statute, *L.* 1955, *c.* 254, furnishes, at least with respect to car dealers, what *N. J. S.* 2*A* :171–1 lacked to make it effective in the *Fair Lawn* case—a penalty provision.

The public policy of this State is against all worldly employment on Sunday, except works of charity and necessity, *N. J. S.* 2*A* :171–1. The means selected for accomplishing and maintaining that policy is not for us to question as long as there is any reasonable basis for the enactment, *Amodio v. Board of Commissioners of Town of West New York, supra,* 133 *N. J. L.* 220 (*Sup. Ct.* 1945); see also the following statutes prohibiting Sunday activity: *R. S.* 45 :4–26—barbering; *R. S.* 45 :22–31—pawnbrokering; *R. S.* 23 :4–24—hunting; *R. S.* 50 :2–11 and 50 :3–15—taking of clams and oysters; *N. J. S. A.* 23 :5–24.4—fishing with nets; *N. J. S. A.* 5 :5–38 and 5 :5–47—horseracing; *N. J. S. A.* 5 :8–31 and 5 :8–58—bingo games and raffles; and *N. J. S.* 2*A* :171–3—service of process.

The judgments below are reversed and the complaints are dismissed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For affirmance*—None.