**NOT PRECEDENTIAL**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 15-1537

SHAWN Y. BROWN,

Appellant

v.

OFFICER ANTHONY MAKOFKA, individually and in official capacity; OFFICER
JONATHAN THOMPSON, individually and in official capacity; CITY OF JERSEY
CITY; JERSEY CITY POLICE DEPARTMENT; POLICE OFFICERS 1-10; JOHN
DOES 10-10; BODY POLITICS 1-10

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-12-cv-05314)
District Judge: Honorable Jose L. Linares

Submitted under Third Circuit LAR 34.1(a)
on November 12, 2015

(Opinion filed: March 17, 2016)

Before: CHAGARES, RENDELL, and BARRY, <u>Circuit Judges</u>

**RENDELL**, <u>Circuit Judge</u>:

Shawn Brown contends that he was subjected to excessive force during an illegal arrest. He brings claims against the City of Jersey City, the Jersey City Police Department, and several Jersey City police officers (collectively, "Defendants") under the United States Constitution pursuant to § 1983, claims under the New Jersey Constitution pursuant to the New Jersey Civil Rights Act, and claims under New Jersey tort law. The District Court granted summary judgment for Defendants on all claims. We will affirm the ruling of the District Court as to all claims except as to its dismissal of the state-law false-arrest claim, which we will vacate and remand for further proceedings.

## I. Factual Background

According to Brown, one evening, as he was leaving the gym where he worked, he walked his motorcycle along the sidewalk, propelling it forward with his feet while sitting atop it. **App. at 49.** According to Officer Makofka, however, it appeared to him that the motorcycle was being propelled forward along the sidewalk by the engine, as Brown's feet were not touching the ground. **App. at 107.** At this point, Officers Makofka and Thomson of the Jersey City Police Department stopped Brown. **App. at 50.** Once stopped, Brown was asked for his license and registration. **App. at 55.** Brown contends that he then began to retrieve his documents but, before he could do so, he was told that

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

he was under arrest. **App. at 55-56.** Officer Thomson testified that before telling Brown that he was under arrest, he asked Brown five times for his documentation and warned him that if he did not produce his documentation he would be placed under arrest. **App. at 163.**

According to Brown, he was then lifted up off of his motorcycle and forced down to the ground. **App. at 56.** According to Officers Makofka and Thomson, as they went to arrest Brown he crossed his arms and grabbed his protective vest on both sides so that they could not handcuff him, prompting them to take Brown to the ground. **App. at 118-19, 164-66.** Several more officers soon arrived. Officers Makofka and Thomson assert that Brown continued to resist arrest by keeping his hands crossed and gripping his protective vest. **App. at 119, 156.** Brown asserts that these officers struck him and prevented him from producing his hands so that he could be handcuffed. **App. at 66.** Eventually, Brown was placed under arrest and later pled guilty to unsafe operation of a motor vehicle in violation of N.J. Stat. Ann. 39:4-97.2 and to violating the Jersey City Municipal Code Noise Ordinance 222-2. **App. at 73, 252-53.** Video footage from a surveillance camera depicted some, but not all, of the foregoing events.

## II. Procedural Background

In the District Court, Defendants moved for summary judgment. The District Court granted summary judgment for Defendants on all claims, relying primarily on the surveillance video footage of the incident.

The District Court granted summary judgment against Brown on his excessive force claim, concluding that the video footage precluded a reasonable jury from finding

3

in his favor. The District Court found it undisputed that the police officers had announced their intention to arrest Brown in an off-camera interaction. The video then shows, in the words of the District Court, "the Officers attempting to place Plaintiff in handcuffs, as three parties come back into view of the camera, with Plaintiff hunched over clearly grasping his protective vest." App. at 12. The District Court, observing that the video "features three minutes of the Officers trying to pry Plaintiff[']s hands from under his body" and that it took four officers to eventually do so, concluded that "no reasonable jury could conclude that Plaintiff was not actively attempting to prevent the officers from handcuffing him." *Id.* Believing that this depicts Brown resisting arrest, the District Court concluded that "the undisputable video evidence does not show the Defendants in particular, or for that matter any of the officers using an amount of force that a reasonable fact finder could find excessive." App. at 13.

The District Court next granted summary judgment against Brown on his claim for false arrest. First, the District Court rejected Brown's contention that there was a genuine dispute whether the police officers had probable cause to believe he was operating his motorcycle on the sidewalk. The District Court found that "[t]he sidewalk surveillance video clearly shows [Plaintiff] on top of his motorcycle, operating it on the sidewalk," App. at 11, giving Defendants "probable cause to stop and detain Plaintiff," App. at 18. Moreover, the Court concluded that, once the officers announced their intention to arrest Brown, "Plaintiff's false arrest claim is defeated because the video clearly shows Plaintiff resisting arrest by crouching over and locking his hands across his protective vest." *Id.* It reasoned further: "It is irrelevant to this Court's analysis as to whether probable cause

4

existed for the obstruction charge because there is probable cause for the resisting arrest charge." *Id.*

The District Court also ruled against Brown on his *Monell* liability claim, finding that "[n]owhere within the record does Plaintiff identify a specific custom, practice, or policy implemented by Defendants which caused a constitutional violation to Plaintiff." App. at 22. Finally, the District Court ruled against Brown on his claims for intentional and negligent infliction of emotional distress, reasoning that Defendants were protected by the New Jersey Tort Claims Act which provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." [1] *See* App. at 26-27 (citing N.J. Stat. Ann. § 59:3-3). The District Court found that Defendants did not use excessive force, act in bad faith, or breach a duty owed to Brown, and therefore granted summary judgment on Brown's claims for intentional and negligent infliction of emotional distress.[2]

### III. Jurisdiction and Standard of Review

The District Court had jurisdiction over this case because of the federal constitutional claims brought by Brown. *See* 28 U.S.C. §§ 1331, 1367. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We exercise plenary review over summary judgment decisions. Thus, we apply "the same standard that the [district] court should have applied." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010).

---

[1] Notably, the statute also provides that "Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J. Stat. Ann. § 59:3-3.
[2] The District Court also granted summary judgment against Brown on his claims under the Fifth, Sixth, and Eighth Amendments, as well as against Brown on his tort claims for assault, battery, and negligence. Brown does not challenge those rulings on appeal.

Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* (citing Fed. R. Civ. P. 56).

## IV. Analysis

For essentially the reasons explained by the District Court, we affirm the grant of summary judgment against Brown on his excessive force, *Monell*, and infliction of emotional distress claims. We also affirm summary judgment of Brown's § 1983 claim for false arrest. We will reverse the award of summary judgment on the state-law false-arrest claim.

### A. *Excessive Force Claims*

We agree with the District Court that the events shown on the video evidence of the incident make it clear that no reasonable fact finder could conclude that the police used excessive force. In evaluating an excessive force case, we ask whether, "from the perspective of the officer at the time of the incident and not with the benefit of hindsight," the officers were objectively reasonable in their use of force. *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Maryland v. Garrison,* 480 U.S. 79, 85, (1987)). This is a "highly individualized and fact specific" inquiry, in which we examine the "totality of the circumstances," including "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

6

The force used by the officers in effectuating Brown's arrest—specifically, pinning Brown to the ground and prying his arms behind his body—was objectively reasonable. Certainly, one might question whether fewer officers or whether a less aggressive approach could have achieved the same result, but "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation omitted). As the Supreme Court has recognized, "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Here, the officers were forced to make a split-second judgment about the amount of force needed to arrest Brown, who was physically resisting arrest by crossing his arms and gripping his protective vest so that the officers could not handcuff him. Based upon the video evidence, no reasonable fact-finder could find that the force used to overcome this resistance was excessive.

### B. False-Arrest Claims

We agree with the District Court that Brown's federal false-arrest claim fails. We will reverse and remand on the state false-arrest claim, however.

The elements of a false-arrest claim are (a) that an arrest occurred; and (b) that the arrest was made without probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). The District Court ruled that the false-arrest claims fail because the police had probable cause to arrest Brown for resisting arrest. *See* App. at 18. ("[I]t is irrelevant to this Court's analysis as to whether probable cause existed for the obstruction charge because there is probable cause for the arrest charge."). But the District Court

7

incorrectly justified the arrest by citing the resistance to that arrest. *Cf. Groman*, 47 F.3d at 635 ("[T]he resisting arrest charge could not have provided probable cause for the arrest ab initio."). We also cannot say that there is clearly probable cause that Brown obstructed the administration of law by failing to provide his license and registration, as that interaction between the officers and Brown is not depicted in the video footage.

Nonetheless, Brown's *federal* false-arrest claim under § 1983 fails because the officers certainly had probable cause to believe Brown had violated New Jersey's motor vehicle laws. Under *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Here, the officers witnessed, and the video shows, Brown operating his motorcycle on the sidewalk (Brown ultimately pled guilty to unsafe operation of a motor vehicle). The probable cause that Brown committed this offense defeats Brown's federal false-arrest claims even though the police actually arrested Brown for obstructing the administration of law (for allegedly not producing his license and registration), as the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

However, whether the police were authorized to arrest Brown under New Jersey law for his unsafe operation of his motorcycle is an open question. The New Jersey Supreme Court in *State v. Pierce*, 642 A.2d 947, 959 (N.J. 1994) announced that "the statutory authorization to arrest for motor-vehicle violations" is not "unlimited." The New Jersey Supreme Court has not, however, provided a bright-line test for determining

8

when a police officer can arrest an individual for violating the motor-vehicle laws.

Instead, the New Jersey Supreme Court has stated that "[t]he exercise of the statutory power to make warrantless arrests for traffic offenses cannot arbitrarily and unreasonably infringe on 'the fundamental constitutional rights guaranteed to all citizens.'" *Id.* (quoting *Gundaker Cent. Motors, Inc. v. Gassert*, 127 A.2d 566, 571 (N.J. 1956)).[3]

Thus, given the uncertainties as to the facts and, if a jury were to not find that the officers had probable cause as to the obstruction charge, as to the applicable law, which were not examined by the District Court, we will vacate the award of summary judgment on the state law claim of false arrest and remand to the District Court for further proceedings.[4]

### C. Remaining Claims

We will also affirm the ruling of summary judgment against Brown's *Monell* liability and infliction of emotional distress claims for the same reasons as articulated by the District Court. *Cf.* App. at 22 ("Nowhere within the record does Plaintiff identify a specific custom, practice, or policy implemented by Defendants which caused a constitutional violation to Plaintiff."); App. at 26-27 ("Defendants did not use excessive

---

[3] The New Jersey Supreme Court has also pointed to a set of guidelines that "advocate issuance of a summons to perpetrators of minor offenses unless arrest is necessary to protect public safety or to assure that the offender will respond to a summons." *Pierce*, 642 A.2d at 959. In practice, the New Jersey Supreme Court has concluded that driving with a suspended license warrants arrest, *see id.*, as does driving without a license and then providing false identity information, but "driving without a license, without more, would not constitute sufficient grounds for a custodial arrest," *State v. Lark*, 748 A.2d 1103, 1104 (N.J. 2000).

[4] On remand, the District Court should consider whether to exercise supplemental jurisdiction over this state law claim in the absence of any federal claims and in the absence of definitive state law on the issue.

9

force when effectuating the arrest of Plaintiff. As a result, Defendants cannot be held liable for intentional nor negligent infliction of emotional distress because Defendants neither acted in bad faith when enforcing the law nor breached a duty owed to Plaintiff when effectuating his arrest.").

## V.  Conclusion

For the foregoing reasons, the ruling of the District Court is affirmed as to all claims except for the state-law false-arrest claim, for which we will vacate the ruling of the District Court and remand for further proceedings.