IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1865.

---

CHARLES H. REEVES v. JEDIAH F. BUTCHER AND BENJA-
MIN BUTCHER.

1. The effect of the statute forbidding "worldly employment or business"
   on Sunday, is to render void every transaction which, if performed on
   a week day, would be enforceable in a court of justice.
2. A note given on a Sunday for money lent, in pursuance of a previous
   understanding to that effect, is void.
3. Payment of interest on such note by the drawer, does not in itself
   amount to a new promise to pay the money due.
4. Nothing but an express promise, subsequently made, will be sufficient
   to support a suit.

This suit was brought to enforce a promissory note drawn
by the defendants to the plaintiff, the consideration being a
loan of money. The note bore date on a Saturday, but it
was proved on the trial that the date of the note was filled
in, and the note and the money actually delivered on the
Sunday following. The evidence further showed that Ben-
jamin Butcher, who was one of the makers of the note and
the principal debtor, the other defendant being surety, sub-
sequently paid a part of the interest falling due on the note.

224

A verdict was taken for the plaintiff, and the case certified to this court.

For plaintiff, *Samuel A. Allen.*

For defendants, *A. L. Eakin.*

BEASLEY, C. J.   The statute of this state for suppressing vice and immorality, enacts that " no travelling, worldly employment, or business, shall be done on a Sunday," and this language, in its obvious and usual signification, would seem to prohibit the transaction of all secular affairs on the day specified.   The provision is an extension evidently from design, of the 29 *Car*. II., *c.* 7, which declared " that no tradesman, artificer, laborer, or other person whatsoever, shall do or receive any worldly labor, business, or work of *their ordinary callings* upon the Lord's day," &c.   So strict an interpretation was put upon these words that it was held that, to subject a transaction to their operation, it must have been done in the " ordinary calling " of one of the parties.   Accordingly, in *Drury* v. *Defontaine,* 1 *Taunt.* 131, a sale of an horse on a Sunday was enforced, it appearing that such sale did not form part of the usual business of the plaintiff. So a similar effect was given to a contract of hiring for a year, made on a Sunday between a laborer and a farmer. *Rex* v. *Whitnash,* 7 *B. & C.* 596 ; and to an agreement by an attorney entered into on the prohibited day, for a settlement of his client's affairs.   *Peate* v. *Dicken,* 3 *Dowl. P. C.* 121.

It is evident that these cases are not reliable guides in any assay to construe the statute of this state, inasmuch as they are expositions resting entirely on the verbal peculiarities of the English law.   The fact that our statute is not an exact transcript of that of Charles II., but exhibits important modifications, is strongly suggestive of an intention to establish in this state a different regulation.   The circumscriptions of the English act by the early judicial determinations, had

deprived it of the greater part of its efficacy; the result of those determinations being that an individual, so far as the secular magistrate was concerned, could, with entire impunity, desecrate the Sabbath, provided he did so in a business affair, disconnected with his ordinary avocation. A regulation thus mutilated does not appear to have recommended itself to the framers of our statute, and hence the inhibition of all "worldy employment or business." The terms are comprehensive, and the legislative intent manifest. In my opinion the effect of the provision is to annul every transaction which, if performed on a week day, would be enforceable in a court of justice. Bating the cases taken out of the general rule by the act itself, there can be no such thing as a suable contract made in this state on a Sunday.

It will be found, upon an examination of the following references, that the courts of this country have very generally expressed views similar to the foregoing, with regard to statutes bearing a close resemblance to the one under consideration. *Watts* v. *Van Ness*, 1 *Hill* 76; *Lyon* v. *Strong*, 6 *Vt.* 219; *Lovejoy* v. *Whipple*, 18 *Vt.* 379; *Allen* v. *Deming*, 14 *N. Hamp.* 133; *Patte* v. *Greely*, 13 *Met.* 286; *Smith* v. *Wilcox*, 19 *Barb.* 581; *S. C.*, 25 *Id.* 341; *Merriam* v. *Stearns*, 10 *Cush.* 257.

In *Crockett* v. *Vanderveer*, *Penn.* 857, Mr. Justice Pennington incidentally remarked that he was not prepared to say that all contracts made on Sunday are void; but the case was decided on other grounds, and is not to be regarded as an authority in opposition to the view above expressed.

It appeared on the trial, that one of the drawers of the note in question, who was the principal debtor, had paid a portion of the interest which had accrued, and it was insisted on the argument that, admitting the original infirmity of the note itself, this act of payment was a ratification, or was, at least, a circumstance from which a promise to pay the money loaned might be inferred.

There were two drawers to the note in question, and it would seem to be self-evident that the agreement, express or

Reeves v. Butcher.

implied, of one of such parties, made after the delivery of such note, could not affect the other. The original agreement being void, the drawers of it were not bound by any common obligation, and consequently the one could not be said to represent the other, on the ground of a community of interest between them. The act of each could affect himself alone, and therefore the payment of the interest by the principal debtor, in the manner above mentioned, could in no respect alter the legal status of the surety.

Nor have I come to the conclusion, with regard to the principal himself, that such payment was a ratification of the note in dispute or an assumption of a legal liability.

There is undoubtedly a class of claims which, having a moral but no legal efficacy, can be the subjects of ratification. But it is to be remembered that the effect of a ratification is to impart validity to the original agreement. Such act creates no new obligation; it merely extends the continuance of, or legalizes one already in existence. The maxim of the law is—" *Omnis ratihabitio retrotrahitur, et mandato priori æquiparatur.*" It follows, therefore, as a consequence which is entirely unavoidable, that there can be no such thing in law, strictly speaking, as a ratification of a transaction which, at the time of its performance, was prohibited by statute. The parties cannot legalize that which the law has declared illegal. It is competent to them to impart a new efficacy to a voidable act, but they have no power to give life to an act which, from reasons of public policy, has been ordained by the legislative authority, to be absolutely void.

In the case of *Williams* v. *Paul,* 6 *Bing.* 653, the Court of the King's Bench held that the consideration, which passed by force of an illegal bargain, was sufficient in law to sustain a subsequent express promise of payment. The case was that of a farmer who, having kept a heifer which he had bought on a Sunday, made a subsequent promise to pay for it; and it was decided he was liable on a *quantum meruit.* This decision rests solely on the ground of an express promise made after the illegal transaction, and the

English judges have manifested a strong repugnance to relax the law, in the least degree, beyond the precise limit of this precedent. Indeed it may even be said to be a point admitting of some doubt, whether 'the doctrine of the case just cited will be followed; for the rule declared by it was certainly alluded to in language which has almost the force of a protest by the Court of Exchequer in *Simpson* v. *Nicholls*, 3 *M. & W.* 239, in which it was held that a replication was bad, which set up a promise implied from the retention by the defendant, of goods which had been sold to him on a Sunday.

This latter decision appears to me to be the result of a correct theory. There is no warrant in reason or in law, to enlarge the means whereby the prohibition of the statute in question, can be violated. It is, as I think, going quite far enough to maintain, that the consideration emanating from the tainted contract will be sufficient to form the foundation for a new express promise. The mere act of paying interest does not imply any intention to create a new obligation.

Such an act will incontestably take a stale promise out of the operation of the statute of limitations; and this may well be; for such act is an unequivocal admission of an existing claim due from the payer to the payee, such claim thus admitted being a legal one. And in the same manner payment of interest on a demand actually void by statute, may be fairly said to admit the existence of such demand; but the admission can have no legal effect, as the demand itself has no validity. The law leaves the parties to an illegal transaction where it finds them; it will not actively help either, and therefore such law cannot be invoked to imply a promise in favor of a *particeps criminis* to pay money due on an agreement, which such law itself denounces as invalid. Nor do I think there is any hardship in such a case; for he who knowingly infringes a positive provision of the penal code has no just ground of complaint, if the law, which he has contemned, shall refuse to help him to avoid the consequences of his own misconduct.

The purpose of the act in question is plain, and in my judgment this court should give it full effect, which cannot be done if the doctrine on which the plaintiffs' claim must rest should prevail.

Let the Circuit Court be advised that a new trial should be granted.

CITED in *Steffens* v. *Earl*, 11 *Vroom* 137.