AUTO-RITE SUPPLY CO., A CORPORATION OF THE STATE OF NEW JERSEY, *ET ALS.*, PLAINTIFFS-APPELLEES, v. MAYOR AND TOWNSHIP COMMITTEEMEN OF THE TOWNSHIP OF WOODBRIDGE, AND THE TOWNSHIP OF WOODBRIDGE, IN THE COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued September 9, 1957—Decided October 21, 1957.

Mr. *Robert N. Wilentz* argued the cause for the defendants-appellants (*Mr. Nathan Duff,* attorney; *Mr. Elias A. Kanter,* of counsel).

Mr. *John Toolan* argued the cause for the plaintiffs-appellees (*Messrs. Jacobson & Winter,* attorneys; *Messrs. Toolan, Haney & Romond,* of counsel; *Mr. Sam Weiss,* on the brief).

The opinion of the court was delivered by

BURLING, J.   The Township of Woodbridge enacted an ordinance "to encourage the observance of Sundays to preserve the public peace and order and to promote the public health by repose and quiet on the day assigned for rest," but only the sale of the following items has been prohibited under pain of fine or imprisonment:

general household electrical appliances
home furnishings and bedding
furniture
floor coverings
hardware
paint and wallpaper
men's and women's wear
shoes
automotive services and parts (except as sold by gasoline
   stations licensed by Woodbridge).

Plaintiffs own mercantile establishments in the township and deal in certain of the items prohibited from Sunday

sale. Included in the questions involved and propounded by the appellant's and argued in this case was:

"3. Was not Woodbridge's Sunday-closing ordinance one authorized by statute and constitutionally valid?"

The ordinance was brought under attack by a suit in lieu of prerogative writ in the Superior Court, Law Division. After Woodbridge filed its answer plaintiffs moved for summary judgment upon supporting affidavits. Woodbridge offered nothing in opposition thereto which would raise a factual issue, and the trial court quite properly viewed as true the statements of uncontradicted facts appearing in the plaintiffs' affidavits. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 75 (1954).

The most significant recital in the moving papers is a recital of the business establishments which are engaging in Sunday trade. Among these are listed:

1 hardware and lumber supply
1 dry goods store
1 camera shop
1 lumber company
1 children's clothing store
1 garden supply store
1 bicycle shop
1 sporting goods store
1 store selling linens, blankets and drapes
1 gift shop
4 candy stores
3 general stores

The trial court concluded that the ordinance effected "an unconstitutional invasion of personal and property rights of the plaintiffs" and deemed the true purpose of the enactment to be an attempt "to subvert competition in favor of the members of the Perth Amboy Merchants Association" and "not for the purpose set forth in the title of the ordinance." 41 *N. J. Super.* 303, 313–314 (*Law Div.* 1956). Woodbridge pursued

an appeal to the Superior Court, Appellate Division, and we certified the cause prior to a review below.

The determination of this case reduces itself to the principal and dispositive question: May a municipality exercise its delegated police powers to enact a Sunday closing ordinance which conflicts with a state statute?

The object of Sunday legislation is to insure a day of quiet, rest and relaxation in the community at large. As stated by Chief Justice Weintraub (then a Judge of the Superior Court) in *Hertz Washmobile System v. Village of South Orange*, 41 *N. J. Super.* 110, 114 (*Law Div.* 1956):

> "The thesis usually advanced today is that the object is to protect all persons from the physical and moral debasement which comes from uninterrupted labor. * * * That this objective may be sought under the police power of the State is beyond question, and so also it may not be disputed that the State may choose the Christian Sabbath for the day of rest, as our Legislature has done."

And see *State v. Fair Lawn Service Center*, 20 *N. J.* 468, at pages 482, 483 (1956) (dissenting opinion).

The legislative policy of this State to set aside the first day of the week as one of rest and relaxation is a declaration of long standing. See *State v. Maier*, 13 *N. J.* 235, 261 (1953). Our legislative pronouncements have been in keeping with the object to be achieved by prohibiting all "worldly employment or business" and are an extension upon the design of the English statute of 29 *Car.* II, *c.* 7 (1676), which merely prohibited one from engaging in the labor of his "ordinary calling." *Reeves v. Butcher*, 31 *N. J. L.* 224, 225 (*Sup. Ct.* 1865). The legislative purpose today is comparable to that of 146 years ago when Justice Pennington commented: "It is to prevent the public exposure of goods, merchandise, etc., for sale on Sunday, and selling them in consequence thereof," *Crocket v. Vanderveer*, 3 *N. J. L.* 856, 857 [*Reprint* 422, 424] (*Sup. Ct.* 1811), and thereby provide an escape from the market place for merchant and customer alike. Sunday is to be a day of rest, and this has been "the general and immemorial policy of the state."

*Sherman v. City of Paterson,* 82 *N. J. L.* 345, 346 (*Sup. Ct.* 1912).

Prior to the revision of *Title 2* of the *Revised Statutes* in 1951 the Sunday statute was equipped with a penalty of one dollar for any violation thereof, *R. S.* 2:207-1. It may have been a compromise between Sunday law advocates and antagonists. When *Title 2A* was enacted the penalty did not accompany the Sunday law, now appearing as *N. J. S.* 2A:171-1 *et seq. State v. Fair Lawn Service Center, supra.* Judge Clapp, speaking as chairman of the Advisory Committee on the Revision of Statutes, noted (in the foreword to *Title 2A*) that the object in revising the Sunday law was to eliminate obsolete provisions rather than effect substantive changes. Further

"It was intended to leave municipalities with the power they theretofore had, to control and regulate Sunday activity."

*N. J. S.* 2A:171-1 is not the source of the power. This is to be found in the omnibus provision of the Home Rule Act, *R. S.* 40:48-2, enabling municipalities to enact ordinances for the preservation of the public health, safety and welfare of its citizens. The Sunday law, however, does cast the die into which local control and regulation must necessarily take shape if the essential purpose of the enactment is to be achieved.

*N. J. S.* 2A:171-1 provides in terms that are unmistakably clear:

"No worldly employment or business, except works of necessity and charity, shall be performed or practiced by any person within this state * * *."

*N. J. S.* 2A:171-2 expands the list of exceptions from the general prohibition:

"Nothing contained in this chapter shall be construed to prohibit the preparation and sale of drugs, meals, prepared food and non-alcoholic beverages on Sunday, nor to apply to sales of alcoholic beverages which are otherwise subject to regulation under Title 33 of the Revised Statutes."

By petition and referendum the legal voters of a municipality may adopt *N. J. S.* 2*A*:171–6 which would permit any person, on Sunday, to "(a) print, publish and sell newspapers, (b) sell and deliver milk, (c) walk, ride or drive for recreation, (d) hire conveyances for riding and driving, or (e) engage or take part in any form of recreation, sport or amusement that is not unlawful on other days of the week, if in so doing such person does not disturb others in their observance of Sunday."

The statute stands as a declaration of state policy. *Gundaker Central Motors v. Gassert,* 23 *N. J.* 71, 83 (1956). Within this framework municipalities may control and regulate Sunday activity. There is nothing in the state act which indicates that a prohibition against the sale of electrical appliances and furniture is essential to achieve a day of rest and relaxation while a prohibition against the sale of children's clothing or the sale of lumber is of no consequence in attaining the objective. The pattern is wholly to the contrary. Prior to the revision of *Title* 2 a local enactment in conflict with the state mandate was *ultra vires. Singer v. First Criminal Court of City of Newark,* 79 *N. J. L.* 386 (*Sup. Ct.* 1910); *Geisler v. Davis,* 9 *N. J. Misc.* 185 (*Sup. Ct.* 1931); cf. *Fennan v. Atlantic City,* 88 *N. J. L.* 435 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 675 (*E. & A.* 1917). The Revision did not alter the situation. The local power was not enhanced to enable piecemeal prohibition and consequent subversion of basic purpose. Hence, although the local power is competent to deal with the measure of penalty, as well as defining works of "necessity and charity" within the statutory contemplation, it is inconsistent with the statutory policy ("no worldly employment or business") to single out particular business enterprises for sanction. The state legislative power has declared the incidence of the prohibition and the local power may not transgress, but must conform to the superior authority. *Borough of Jamesburg v. Hubbs,* 6 *N. J.* 578, 584 (1951); *Hasbrouck Heights Hosp. Ass'n. v. Borough of Hasbrouck Heights,* 15 *N. J.* 447, 455 (1954). And *Art.* IV, *Sec.* VII, *par.* 11 of the

1947 *Constitution* enjoining a liberal construction of municipal power has no relevancy here. The mandate did not operate to vest municipalities with a source of power not delegated by statute, *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 518 (1952), and "unless constitutionally secured, the municipality has no inherent right of self-government beyond the control of the state." *Jersey City v. Martin,* 126 *N. J. L.* 353, 361 (*E. & A.* 1941). A municipal corporation is a government of enumerated powers; it has no inherent jurisdiction to make laws or adopt regulations of government and must stay within its delegated authority. *Grogan v. DeSapio,* 11 *N. J.* 308, 321 (1953); *Scatuorchio v. Jersey City Incinerator Authority,* 14 *N. J.* 72, 85 (1953).

But it is contended that our courts have recognized the validity of local laws which singled out particular undertakings for special penalty where they have violated the state and local policy. The cases relied on all occurred at a time when the state statute contained a penalty provision, and the rationale of decision was that municipalities could legislate in aid of the state enactment, in that the municipal power was capable of imposing more severe deterrents upon persons who chose to violate the statute with impunity for the price of a dollar. *Sherman v. City of Paterson, supra; Schachter v. Hauenstein,* 92 *N. J. L.* 104 (*Sup. Ct.* 1918); *Mazzarelli v. City of Elizabeth,* 11 *N. J. Misc.* 150 (*Sup. Ct.* 1933). And the enhanced penalty for particular violations was not considered to create invidious distinctions because those not affected were presumed to be adherents to the state policy until shown otherwise.

Today the state statute contains no penalty, and the undisputed facts in the record before us demonstrate that the statutory declaration alone has no deterrent influence upon merchants who seek Sunday trade. Acknowledgment of the fact necessarily requires that local enactments, to conform with state policy, must reflect an enforcement as broad as the purpose of the Sunday law. It is no answer to suggest that in the absence of statutory enactment the

local legislative power delegated under Home Rule might deal with the evil in degrees and attack it where the most pressing need is felt. Municipalities are bound to act in good faith in the pursuance of the common good and welfare of their citizens. The powers delegated under Home Rule legislation are amply adequate to fulfill legitimate ends. But they must not be abused.

Here the substance of the ordinance makes a sham of the declared title and purpose to be served. The doors of the paint and wallpaper stores are closed but lumber supplies flow freely, all supposedly, in the interest of peace and quiet, rest and relaxation to all merchants and the purchasing public alike. The mere statement of the proposition demonstrates that the Woodbridge ordinance was not designed to serve the stated objective.

In summarizing, it may be said: The state policy is a day of rest and relaxation. Sunday closing ordinances may not be validly enacted to conflict with a statute which declares state policy, namely, no worldly employment or business may be performed, excepting works of necessity and charity within the statutory contemplation and those activities mentioned in the statute and placed with the will of the electorate by local referendum vote. There is no middle ground. The Woodbridge ordinance conflicts with state policy and it is therefore void and of no effect.

The judgment is affirmed for the reasons stated in this opinion.

WACHENFELD, J. (concurring). I would affirm the judgment below for the reasons expressed by Judge Ewart at the trial level.

FRANCIS, J. (concurring). I concur in the opinion of Justice BURLING. However, with respect to *Sherman v. City of Paterson*, 82 *N. J. L.* 345 (*Sup. Ct.* 1912); *Fennan v. Atlantic City*, 88 *N. J. L.* 435 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 675 (*E. & A.* 1917); *Schachter v. Hauenstein*, 92 *N. J. L.* 104 (*Sup. Ct.* 1918); *Mazzarelli v. City of*

*Elizabeth*, 11 *N. J. Misc.* 150 (*Sup. Ct.* 1933); *Richman
v. Board of Commissioners of the City of Newark*, 122 *N. J. L.*
180 (*Sup. Ct.* 1939), which are relied on by appellants, I
desire to reiterate the statement contained in my concurrence
in *Hertz Washmobile System v. Village of South Orange*,
25 *N. J.* 207 (1957), that to the extent that such cases
may be said to approve municipal action in singling out
some business for closing on Sunday and of allowing others
(not works of necessity or charity or within some other
exception for which provision is made) to remain open,
either by express language or by implication, as by the
adoption of a *laissez faire* attitude toward them, in my
judgment they, too, fly in the face of the controlling legis-
lative will and should be overruled.

HEHER, J. (dissenting). Plaintiffs have judgment
vacating the local Sunday Observance ordinance under a
complaint in lieu of *certiorari* alleging that the plaintiff
Auto-Rite Supply Co. is a taxpayer and the operator in
Woodbridge of "an automotive and automotive parts busi-
ness," and "It has been conducting sales of automotive parts
at such place on Sundays and is at the present time con-
ducting such sales on that day and in the future intends
and desires to conduct such sales on such days," and the
co-plaintiffs "are merchants selling categories of merchandise
other than automotive parts," and "They have been and are
now conducting, and in the future intend and desire to
continue to conduct, sales of their merchandise on Sundays,"
and that the ordinance is "an invalid and unreasonable
exercise of the police power," and "discriminatory" against
Auto-Rite "in favor of gasoline stations, with reference to
the sale of automotive parts on Sundays," and against all
plaintiffs "in favor of all merchants who sell merchandise
on Sundays other than the categories enumerated in section 1
of the ordinance."

This, notwithstanding *N. J. S.* 2A:171–1, ordaining that
"No worldly employment or business, except works of neces-

sity and charity," shall be "performed or practiced" by any person within the State on Sunday.

The holding of the Superior Court, 41 *N. J. Super.* 303 (*Law Div.* 1956), was that *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468 (1956) "destroys the basis upon which such Sunday closing ordinances were sustained in *Sherman v. City of Paterson,* 82 *N. J. L.* 345 (*Sup. Ct.* 1912); *Schumacker v. Little Falls Township,* 92 *N. J. L.* 106 (*Sup. Ct.* 1918); and *Mazzarelli v. City of Elizabeth,* 11 *N. J. Misc.* 150 (*Sup. Ct.* 1933)"; that "a criminal statute without a penalty clause [*N. J. S.* 2*A*:171–1] is of no force and effect" and "presently we have in this State no effective statute prohibiting the carrying on of general business on the Sabbath." And undue discrimination was found, in that the ordinance "attempts to prohibit on the Sabbath the operation of particular types of business * * * while leaving many other commercial enterprises free to carry on their business on the Sabbath as they had been doing prior to the adoption of the ordinance," and "there is no reasonable or logical basis for singling out the particular businesses named in the ordinance while leaving many other businesses free to operate on the Sabbath * * *"; the ordinance "can hardly be said to attempt to make classifications of prohibited businesses, let alone the consideration for justification of such classification * * *."

The contention here is that the ordinance (a) denies the equal protection of the laws guaranteed by the Federal Constitution, and (b) the "provisions of *N. J. S.* 2*A*:171–1 are unenforceable against anyone, and cannot operate to prevent the invalidation of the ordinance for unconstitutional discrimination," in that under *Fair Lawn* "no person may be prosecuted for violation of *N. J. S.* 2*A*:171–1, whether a proceeding to such end be brought by a municipality, a county, or the State," and so "It follows that none of the persons selling commodities on Sunday in Woodbridge, other than the commodities prohibited by the ordinance, can be prevented from doing so by reason of the State Sunday Law"; under *Fair Lawn,* it is insisted, such person "cannot be

prosecuted criminally therefor," "nor can he be enjoined in equity or subjected to summary abatement by the local authorities, unless his sale of his commodities constitutes a nuisance or offends some other enforceable penal law or ordinance, neither of which situations has been shown to obtain in this case"; and the ordinance is void against Auto-Rite, particularly, because it is "vague and uncertain," and if the provision concerning automotive parts means that such parts "may be sold only by gasoline stations," it is "unconstitutionally discriminating" and "violates the equal protection clause."

My colleagues have concluded that *N. J. S.* 2*A*:171–1 *et seq.* "stands as a declaration of state policy," citing *Gundaker Central Motors v. Gassert*, 23 *N. J.* 71, 83 (1956), and "Within this framework municipalities may control and regulate Sunday activity," yet the local power cannot be directed to "piecemeal prohibition and consequent subversion of basic purpose"; "Hence, although the local power is competent to deal with the measure of penalty, as well as defining works of 'necessity and charity' within the statutory contemplation, it is inconsistent with the statutory policy ("worldly employment or business") to single out particular business enterprises for sanction"; the "state legislative power has declared the incidence of the prohibition and the local power may not transgress, but must conform to the superior authority."

But I submit that the reasoning proceeds on mistaken hypotheses of law and fact.

The ordinance forbids the sale or delivery on Sunday of "any item or items of merchandise commonly known as general household electrical appliances (including, but without·in any way limiting the generality of the foregoing, television sets, radios, phonographs, refrigerators, washing machines, home electrical fixtures and appliances, and component parts of any of the foregoing); furniture, home furnishings and bedding, floor coverings, hardware, paint and wallpaper, men's and women's wear, shoes, automotive services and parts except as sold by gasoline stations, licensed

by the Township of Woodbridge, within the limits of the Township of Woodbridge"; and a transgressor is rendered "liable to a fine of not more than $100 for each offense or imprisonment for a term not exceeding 30 days, or both such fine and imprisonment."

In *Fair Lawn* the defendant operator of an automobile service station was convicted of washing an automobile on Sunday for hire in violation of *N. J. S.* 2A:171–1, and fined under *N. J. S.* 2A:169–4, providing for the punishment of one adjudged a disorderly person; and the holding was that, there being no penalty prescribed by *N. J. S.* 2A:171–1 for a violation of its mandate, such transgressor "cannot [for that offense] be convicted as a disorderly person and fined as such * * *."

*N. J. S.* 2A:171–1 declares in peremptory terms that there shall be no "worldly employment or business" on Sunday, save "works of necessity and charity"; and this constitutes a general affirmation of State policy wholly beyond the province of the local subdivisions of government to set at naught or vary or modify. The Legislature has not prescribed sanctions for the enforcement of the policy on the state level; it has left that to the judgment and discretion of the municipalities in the exercise of the police power pursuant to *R. S.* 40:48–2, to serve the local need and the general welfare according to the particular circumstances. It could not have meant otherwise; it is not to be presumed that the lawgivers designed to make a mere declaration of unenforceable policy, and thus to do an utterly vain and futile thing. No doubt, it had in view that a general penalty to ensure obedience might not be adequate to meet particular local exigencies. But whatever the reason, this view of the intent and purpose of the statute is clear and compelling; there is no discernible reason *contra*. Indeed, we have this revealing note by Judge Clapp, the chairman of the Advisory Committee on the Revision of Statutes, which drafted *Title 2A*, found in the foreword to the Title, adverted to by Mr. Justice Oliphant in *Fair Lawn:*

"The general object of the Revision of the Sunday laws (*N. J. S.* 2A:171–1 to 2A:171–12) was not to make broad changes in substance, but rather to eliminate obsolete provisions. It was intended to leave municipalities with the power, they therefore had, to control and regulate Sunday activity."

And such was the holding of Chief Justice Vanderbilt for this Court in *Gundaker Central Motors v. Gassert,* cited *supra.*

The absence of specific penalties does not render the Sunday observance mandate of the statute nugatory and meaningless. Any place in which "illegal practices are habitually carried on is a disorderly house," and punishable as a crime. *State v. Martin,* 77 *N. J. L.* 652 (*E. & A.* 1909), where the illegal practice was usury for which there was no penalty save the deprivation of the money which the statute prohibited the lender from taking; *Haring v. State,* 51 *N. J. L.* 386 (*Sup. Ct.* 1889), affirmed 53 *N. J. L.* 664 (*E. & A.* 1891), where the practice was betting on horse races, no longer indictable and punishable as a crime, but "was still unlawful and against the declared policy of the law"; *State v. Reade,* 98 *N. J. L.* 596 (*Sup. Ct.* 1923), where Sunday motion pictures and vaudeville constituted the illegal practice.

*R. S.* 40:48–2 empowers the municipalities to take such action as may be deemed "necessary and proper" for the "good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants," the power of internal police regulation ample to sustain the action comprehended in the ordinance under review, and there is no occasion to resort to the power to license and regulate local businesses embodied in *N. J. S. A.* 40:52–1(g).

Nor is it essential to the "equal protection of the laws" that the sanctions laid down in the ordinance reach all worldly activities forbidden by the State Sunday Observance Act. A police ordinance of this class is required to be fair and reasonable and factually well founded and is presumed

to be such until the contrary is shown; barring a showing *contra,* the assumption is that the measure has a rational basis within the knowledge and experience of the local lawmakers; judicial interposition is justifiable only where the action taken is patently unreasonable and oppressive, and thus an arbitrary use of the power; and the exercise of the essentially discretionary function of classification is unimpeachable if free from invidious distinctions and discriminations. It suffices if the classification have a rational and just relation either to the fulfillment of the essential legislative design or to some substantial consideration of policy or convenience bearing upon the common good; and the constitutional standard is satisfied if there be any reasonable state of facts affording just ground for the action taken, a difference of degree having material relevancy to the police regulation in view. *Guill v. Mayor and Council of the City of Hoboken,* 21 *N. J.* 574 (1956).

The principle of equality of treatment is not violated by classification which rests upon substantial differences fairly related to the public purpose to be fulfilled. Where the end is one to which legislative power may properly be addressed, it is enough "if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end"; when the "subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." *Stephenson v. Binford,* 287 *U. S.* 251, 53 *S. Ct.* 181, 77 *L. Ed.* 288 (1932). A "wide scope of legislative discretion may be exerted in classifying without conflicting with" the equality clause of the Fourteenth Amendment; the equal protection clause "does not restrain the normal exercise of governmental power, but only abuse in the exertion of such authority, * * *." *Louisville & N. R. Co. v. Melton,* 218 *U. S.* 36, 30 *S. Ct.* 676, 54 *L. Ed.* 921 (1910). See also *Kolch v. Board of River Port Pilot Commissioners,*

330 *U. S.* 552, 67 *S. Ct.* 910, 91 *L. Ed.* 1093 (1947); *Jamouneau v. Harner,* 16 *N. J.* 500 (1954). The legislative authority "is not bound to extend its regulation to all cases which it might possibly reach. The Legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' " *West Coast Hotel Co. v. Parrish,* 300 *U. S.* 379, 57 *S. Ct.* 578, 81 *L. Ed.* 703 (1937). See *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1949); *Board of Health of Weehawken Township in Hudson County v. New York Central R. Co.,* 4 *N. J.* 293 (1950).

This presumption of a substantial difference of degree related to the public exigency to be met, a blow at "the evil where it is most felt," has not been overcome here. The ordinance has in view the maintenance of the "public peace and order" and the promotion of the "public health by repose and quiet on the day assigned for rest"; and the sale, disposition and delivery of the enumerated articles of merchandise and wearing apparel are forbidden to all alike, a measure presumably shown by experience to be most needed to serve the public object in mind; and there is no conceivable ground for the suggestion that the action is unreasonable and arbitrary, to serve purely private aims and not a public interest within the range of the police power.

A local ordinance forbidding the sale on Sunday in any store, shop or other place, of clothing, shoes, leather and findings, hats or hardware, adopted during the subsistence of the essentially similar predecessor statute, *R. S.* 2:207-1, was sustained as a proper exercise of local discretion "to single out certain occupations, the prosecution of business in which upon Sunday may be particularly objectionable and offensive, * * *." *Sherman v. City of Paterson, supra.* There, the ordinance enlarged the statutory fine of $2 and provided also for imprisonment; and this was sustained as a measure "to effectuate compliance with the law," where the

statutory fine was not deemed a "sufficient deterrent in the locality to prevent the violations of the law." And it was said that the claim of discrimination was more fanciful than real, since "those specially prohibited by ordinance from exercising their calling upon Sunday, are also forbidden by the general law of the state from performing the same act upon that day," and "it must be assumed that they will obey the clear mandate of the law, and not violate it, and hence, they possess no privilege, right or immunity which, under our constitutional guarantee, can be abrogated or infringed by the enforcement of a local law whose sole and only distinctive characteristic is the imposition of penalties not contained in the general act."

See also *Fennan v. Atlantic City*, 88 *N. J. L.* 435 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 675 (*E. & A.* 1917), where the ordinance forbade certain specified amusements on Sunday but excepted others; *Schachter v. Hauenstein*, 92 *N. J. L.* 104 (*Sup. Ct.* 1918), involving an ordinance barring Sunday store-sales of enumerated goods; and *Mazzarelli v. City of Elizabeth, supra,* where the ordinance imposed an added penalty for local infringement.

But it is affirmed in the opinion of this Court that these cases beginning with *Sherman v. City of Paterson* "all occurred at a time when the State statute contained a penalty provision, and the rationale of decision was that the municipalities could legislate in aid of the State enactment, in that the municipal power was capable of imposing more severe deterrents upon persons who chose to violate the statute with impunity for the price of a dollar," and "the enhanced penalty for particular violations was not considered to create invidious distinctions because those not affected were presumed to be adherents to the state policy until shown otherwise"; "Today the state statute contains no penalty, and the undisputed facts in the record before us demonstrate that the statutory declaration alone has no deterrent influence upon merchants who seek Sunday trade"; "Acknowledgment of the fact necessarily requires that local enactments, to conform with state policy, must reflect an

enforcement as broad as the purpose of the Sunday law," and it is "no answer to suggest that in the absence of statutory enactment the local legislative power delegated under Home Rule might deal with the evil in degrees and attack it where the most pressing need is felt."

But if under the predecessor state statute, *R. S.* 2:207–1, prescribing specific penalties for violations of the declared Sunday observance policy, in terms much the same as in *N. J. S.* 2A:171–1 *et seq.,* it was a local police function, *R. S.* 40:48–2, to lay down greater sanctions by ordinance in aid of the enforcement of the State policy related to particular local needs, and this was a long-established practice of legislative origin, rendered crystal clear by acceptance of this judicial interpretation of these statutes, does not the selfsame policy *a fortiori* obtain when the state-ordained penalties have been abrogated and enforcement of the policy relegated to the local subdivisions of government? It is the undoubted province of the Legislature so to provide; and there can be no doubt that it has done so here.

The statutory "work of necessity" is not an absolute; it varies with local conditions and circumstances, and it may vary from time to time in accordance with changing local needs; and this definitive power is given to the local legislative agency, to be exercised according to reason and discretion, free of the arbitrary action that is alien to the essential policy of the statute.

In a word, plaintiffs are seeking, not the equal protection of the laws, but rather protection against local interference with pursuits in violation of the Sunday Observance statute; and it would seem to be axiomatic that the judicial power may not be invoked in aid of plaintiffs' avowed objective to flout the state law. "Equal protection" is not a rigid formalism, but rather a pragmatic application of the principle of equality of treatment and burden and differentiation in reasonable conformity with the public policy to be served.

This was the issue raised in *Gundaker, supra,* and the Federal Supreme Court dismissed the appeal for want of a substantial federal question, 354 *U. S.* 933, 77 *S. Ct.* 1397,

1 *L. Ed. 2d* 1533 (1957). There, the statute, *L.* 1955, *c.* 254, *N. J. S.* 2*A*:171–1.1, prohibited dealing in new or used cars on Sunday, on pain of specific penalties, fine or imprisonment, either or both.

But the ordinance also forbids the supplying on Sunday of "automotive services and parts except as sold by gasoline stations"; and this seeming sanction of Sunday sales of automotive parts by the operators of gasoline stations is *ultra vires* and void in contravention of the State statute, unless automotive parts be deemed a necessity in the same category as gasoline. On the contrary hypothesis, the provision would be severable and the remainder of the regulation would stand unaffected. *Independent Warehouses, Inc. v. Scheele,* 134 *N. J. L.* 133 (*E. & A.* 1946), affirmed 331 *U. S.* 70, 67 *S. Ct.* 1062, 91 *L. Ed.* 1346 (1947).

The ordinance is not in "conflict" with State law; it does not "impliedly grant [to "some existing business endeavors"] permission to operate in violation of the State statute."

I would reverse the judgment.

WACHENFELD, J., concurring in result.

*For affirmance*—Justices OLIPHANT, WACHENFELD, BURLING and FRANCIS—4.

*For reversal*—Justice HEHER—1.