HERTZ WASHMOBILE SYSTEM, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THE VILLAGE OF SOUTH ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued September 9 and 16, 1957—Decided October 21, 1957.

*Mr. Ward J. Herbert* argued the cause for the defendant-appellant (*Messrs. McCarter, English & Studer,* attorneys).

*Mr. Joseph M. Jacobs* argued the cause for the plaintiff-respondent (*Messrs. Stoffer & Jacobs,* attorneys).

The opinion of the court was delivered by

BURLING, J. The Village of South Orange enacted an ordinance "to prohibit on Sunday the Sale of Certain Merchandise and the Carrying on of Business for Such Sale and for Certain Other Purposes." Section 1 of the enactment prohibits selling or offering for sale a number of items of merchandise on Sunday. Section 2 prohibits the operation of any business on Sunday for the purpose of selling Section 1 articles as well as those engaged in dry cleaning, laundering, tailoring, *washing of automobiles*, · lubricating of automobiles, repairing of automobiles (except emergency repairs to disabled vehicles), or the operation of beauty shops. Section 3 directs that the specific prohibitions are not to be construed to prohibit the preparation or sale of drugs, meals, food, baked goods, ice cream and other confections, tobacco, newspapers, non-alcoholic and alcoholic beverages, the delivery of flowers purchased prior to Sunday, nor the operation of restaurants, luncheonettes, ice cream parlors, gasoline stations, stationery stores and news stands.

Plaintiff is commercially engaged in the business of washing automobiles. The ordinance expressly prohibits this operation on Sunday and feeling aggrieved by the legislative bar plaintiff sought an adjudication of its validity by complaint in lieu of prerogative writ. The trial court determined the ordinance to be invalid because its operative effect was inconsistent with the statutory purpose reflected in *N. J. S.* 2*A*:171–1. 41 *N. J. Super.* 110 (*Law Div.* 1956). South Orange pursued an appeal to the Superior Court, Appellate Division, and we certified the cause prior to a review below.

The ordinance here carries the same invalidity which has caused this court to declare the Woodbridge Sunday closing law as *ultra vires* the municipal power. *Auto-Rite Supply Co. v. Mayor and Township Committeemen of Township of Woodbridge*, 25 *N. J.* 188 (1957).

The South Orange ordinance contains a more comprehensive list of specific activities that are prohibited on Sunday than did the Woodbridge ordinance previously considered.

But the legislative pronouncement in *N. J. S.* 2A:171–1 requires nothing less than a general prohibition with exceptions accorded only to works of necessity and charity. The statute itself excludes from prohibition the preparation and sale of drugs, meals, prepared food and non-alcoholic beverages (as well as alcoholic beverages which are otherwise subject to regulation), *N. J. S.* 2A:171–2, and provision is made to enable the legal voters of a municipality to adopt *N. J. S.* 2A:171–6 which would permit any person, on Sunday, to "(a) print, publish and sell newspapers, (b) sell and deliver milk, (c) walk, ride or drive for recreation, (d) hire conveyances for riding and driving, or (e) engage or take part in any form of recreation, sport or amusement that is not unlawful on other days of the week, if in so doing such person does not disturb others in their observance of Sunday."

In measuring the effect of the ordinance in fulfilling the purpose of the state policy, we quote in part Chief Justice Weintraub (then a Judge of the Superior Court) in the trial court (41 *N. J. Super.*, at *page* 127):

"Looking at the total scene, apart from the ordinance itself, we find other activities beyond those set forth in section 3 which are not restrained by the ordinance. For example, there are several manufacturing establishments in the Village. Their operations on Sunday are not reached by the ordinance. Nor does the ordinance prohibit the operation of a quarry in the Village, as to which a letter in evidence reveals the protest of the owner that, while in the past it rarely operated on Sunday, yet it would be injured competitively if its activities were prohibited while other quarries in other communities were free to operate. * * * It does not prohibit the conduct of an existing book store, pet shop, hobby shop, camera shop, jewelry shop."

The fundamental error in approach is not remedied by a showing that activities not within the prohibition, by voluntary choice of the parties responsible, are not engaging in Sunday operations. "The fact that no such establishments, apart from lunch wagons, remain open all night is immaterial. The validity of the ordinance is to be tested not by what is actually done but by what it permits to be done."

*Hart v. Teaneck Township,* 135 *N. J. L.* 174, 177 (*E. & A.* 1947). We cannot think that the ordinance in question was intended to be supplemented each time a particular business activity not now prohibited reverses its present Sunday policy.

Parenthetically, it may be appropriate to set forth a prediction which counsel for South Orange attaches to the determination below:

"Ordinances of long standing * * * will become invalid and adoption of new ones, paraphrasing the statute, will be unlikely because of the difficult choice between the evils of unrestrained commercialism and the outmoded stringency of the statute."

If this be true, it is quite clear that a remedy cannot be expected to be found in the judicial branch of government for what may be prudent is peculiarly for the legislature to consider and by petition to it to re-appraise its present approach to the situation.

The judgment is affirmed.

FRANCIS, J. (concurring). I concur in the view expressed by Mr. Justice Burling that the ordinance under attack in this case is invalid. However, for purposes of emphasizing the fundamental problem facing us, I desire to reiterate the thesis put forward, namely, that the local action is condemned because it conflicts with the age-old policy of our State as set forth in *N. J. S.* 2A:171–1 to 6, inclusive, governing Sunday observance.

The controlling legislative declaration is clear.

"*No* worldly employment or business, *except works of necessity and charity* shall be performed or practiced *by any person within this state* on * * * Sunday." *N. J. S.* 2A:171–1. (Emphasis added)

A more positive or more pervasive mandate would be difficult to devise. But certain activities were removed from its broad compass and authorized:

"[T]he preparation and sale of drugs, meals, prepared food and non-alcoholic beverages * * * [and] sales of alcoholic beverages

which are otherwise subject to regulation under Title 33 of the Revised Statutes." *N. J. S.* 2A:171-2.

And it was made possible to

  "(a) print, publish and sell newspapers, (b) sell and deliver milk, (c) walk, ride or drive for recreation, (d) hire conveyances for riding and driving, or (e) engage or take part in any form of recreation, sport or amusement that is not unlawful on other days of the week, if in so doing such person does not disturb others in their observance of Sunday," *N. J. S.* 2A:171-6,

providing the electorate of a particular municipality approves such conduct by popular vote on the question at a primary or general election. *N. J. S.* 2A:171-6. Except for certain other businesses which are specifically proscribed on Sunday by separate enactments (referred to in *Gundaker Central Motors v. Gassert,* 23 *N. J.* 71 (1956)), this outline represents the pattern of the legislative will with respect to Sunday work activities.

I quite agree that it is within the competence of municipal governments to adopt ordinances on the subject as an exercise of its authority under *R. S.* 40:48-2 to legislate in the interest of the public health, welfare and safety. But such governments are creatures of statutory origin and the boundaries of permissible action by them are those expressly delegated by the State or reasonably necessary to effectuate the delegation. They are impotent to act in opposition to general regulations established by the Legislature for purposes of state-wide control. They can never rise above the source of their power.

It cannot be said reasonably even in the broad field of police power that a municipal governing body may enact ordinances sanctioning practices, either expressly or impliedly, which the State has forbidden, or banning practices which the State has expressly or impliedly validated. So the scope of municipal authority relating to Sunday observance must be appraised in the light of any preemption of the field by the paramount sovereignty.

The State has issued its manifesto against all worldly employment or business not identifiable as works of necessity

and charity, except those endeavors described above and except those which are placed specifically within the control of the electorate. Enumeration of the exclusions, in my judgment, is conclusive against the existence of any others. The statute and the exceptions constitute an affirmation of state policy wholly beyond the province of the local agencies of government to set at naught or vary or modify in its essential attributes.

The record in this case shows beyond question that there were and are non-charity and non-necessity businesses being conducted in the village on Sunday other than the ones outlawed by the ordinance. Equally plain is the fact that the board of trustees was aware of their existence and that the majority of the trustees intended to approve and permit their continuance. The validity of such local fiats cannot be gauged in a vacuum. A just determination can be arrived at only through a knowledge and an understanding of the realities with which they are surrounded. Thus, in situations like the persent one, even though some existing business endeavors are not proscribed expressly in the ordinance, the effect, so far as the local authority is concerned, is impliedly to grant them permission to operate in violation of the state statute. And the *imprimatur* thus implied is of more profound significance now than in earlier times because of the failure of the state statute to specify any penalty or sanction to be imposed in the event of its violation.

The Legislature has established the public policy with respect to Sunday closing and has defined the permissible departures therefrom. The municipalities have no alternative but to conform. They cannot create other exceptions either expressly or by implication.

In the present state of affairs, to me the view is inescapable that the function of the judicial branch of the government is to enforce the legislative will and to invalidate the village ordinance.

Much stress is laid by the village on *Sherman v. City of Paterson*, 82 *N. J. L.* 345 (*Sup. Ct.* 1912), and like cases, as support for this ordinance. To the extent that such

cases may be said to approve municipal action in singling out some business for closing on Sunday and of allowing others (not works of necessity or charity or within some other exception for which provision is made) to remain open, either by express language or by implication, as by the adoption of a *laissez faire* attitude toward them, in my judgment they, too, fly in the face of the controlling legislative will and should be overruled.

In our own discussion of the matter, the argument was advanced that even in the absence of a local general Sunday closing ordinance, and without regard to the state statute on the subject, a municipality may in the exercise of its general police power ban the operation of a single business on Sunday. For example, the suggestion was made that if an individual enterprise created a particular and unique disturbance or traffic hazard on Sunday, it might be made the object of a formal prohibitory edict on that day. *Cf. Gundaker Central Motors v. Gassert, supra.* Whatever may be the legal merit of such a contention (and it is not necessary to discuss it at this time), the record here fails to bring to our attention any such factual setting associated with plaintiff's business. No such proof was adduced at the hearing in the Law Division. Mere general reference to complaints, without more, is not sufficient. Moreover, the opinion of Judge (now Chief Justice) Weintraub in the Law Division says:

"Defendant through its counsel disclaims any purpose other than the assurance of a compulsory day of rest * * *."

And:

"It should be noted that no effort is made to sustain the ordinance as to the plaintiff on the theory that its operations constitute a nuisance * * *."

Further, in this court no contention is offered by the village that the ordinance should be sustained against plaintiff's washmobile business alone on the ground that it constitutes such a particular or unique nuisance or hazard, traffic or otherwise, as to warrant isolated treatment.

Under the circumstances, consideration of the proposed issue is purely hypothetical; it is not ripe for determination at this time.

HEHER, J. (dissenting). The ordinance here is not the same in structure and content as the local regulation considered in *Auto-Rite Supply Co. v. Mayor and Township Committeemen of Township of Woodbridge,* 25 *N. J.* 188 (1957). It is in these terms:

"Section 1. It shall be unlawful within the limits of The Village of South Orange, on the first day of the week, commonly called Sunday, to sell or offer for sale, either at wholesale or retail, television sets, radios, phonographs, phonograph records, refrigerators, washing machines, electrical fixtures and supplies, household electrical appliances, or the component parts of any of the foregoing, or furniture, home furnishings, yard goods, toys, sporting goods, articles commonly described as notions, lumber, building materials and supplies, bedding, floor covering, hardware, garden tools, fertilizer, seeds, plants, shrubbery, cut flowers and floral arrangements, wallpaper, paints, painters' materials and supplies, wearing apparel, shoes, and automobile accessories; and the selling or offering for sale thereof is hereby prohibited.

Section 2. It shall be unlawful within the limits of The Village of South Orange, on the first day of the week, commonly called Sunday, to open or keep open any place of business for the purpose of selling or offering for sale any merchandise the sale of which is prohibited on Sunday by Section 1 of this ordinance, or for the purpose of carrying on or conducting any of the following businesses, alone or in conjunction with other prohibited or permitted business or businesses: dry cleaning, laundering, tailoring, washing of automobiles, lubricating of automobiles (except the sale of motor oil), repairing of automobiles (except emergency repairs to disabled vehicles), or operating a beauty shop; and the opening or keeping open of any place of business for any such purpose is hereby prohibited.

Section 3. Nothing contained in this ordinance shall be deemed or construed to prohibit, on Sunday, the preparation or sale of drugs, meals, food, baked goods, ice cream and other confections, tobacco, newspapers, non-alcoholic beverages (or alcoholic beverages which are otherwise subject to regulation under Title 33 of the Revised Statutes of New Jersey) or the delivery of flowers or floral arrangements purchased at retail prior to Sunday, nor to apply to the operation on Sunday of businesses commonly known as restaurants, luncheonettes, ice cream parlors, gasoline stations, stationery stores and news stands; provided, however, that there is not at any such place of business sold or offered for sale on Sunday any merchandise the sale of which is prohibited on Sunday

by section 1 of this ordinance, and there is not carried on thereat on Sunday any of the businesses which are prohibited by Section 2 of this ordinance."

A violation of any of the foregoing provisions, section 4, subjects the offender to "a fine of not more than $100 for each offense, or to imprisonment for a term not exceeding 30 days, or both such fine and imprisonment."

And it is provided, section 6, that if for any reason "any section, paragraph, sentence, clause or phrase" of the ordinance be "held or adjudged to be unconstitutional or invalid, such adjudication shall not affect the remainder hereof."

The plaintiff corporation "is and has continuously since June 1955 been engaged in the business of washing automobiles by the use of semi-automatic machinery and equipment on the premises located at the northerly corner of Irvington Avenue and College Place" in the Village of South Orange, an area zoned for business. By this proceeding in lieu of the prerogative writ of *certiorari,* it seeks to have the ordinance adjudged to be "unconstitutional, invalid and void," and "arbitrary, unreasonable, discriminatory and oppressive," and a denial of due process and the equal protection of the laws. It is alleged in the complaint that plaintiff's "service rendered on Sunday is a convenience to persons who find it difficult or impossible to have their automobiles washed on any other day and that approximately 30% of [its] gross business is done on Sunday"; that "most of the commodities listed" in section 1 of the ordinance "have not been and are not being sold on Sundays" and "most of [the] businesses" enumerated in section 2 "are not or have not been conducted on Sundays" in South Orange, and the ordinance "was intended, designed and adopted solely and entirely for the purpose of terminating Sunday operation by the plaintiff and thereby eliminating from a business zone a lawfully constituted business," and "was motivated by complaints that plaintiff was conducting a nuisance and the ostensible employment of the defendant's legislative power to attempt to alleviate an alleged nuisance is an arbitrary and unlawful use of sovereign power."

The rationale of the judgment under review, 41 *N. J. Super.* 110 (*Law Div.* 1956), is that while it is "generally held that the power to provide for the general welfare embraces authority to enact Sunday closing ordinances," and "the authority is included in the grant of power to preserve the welfare made by the Home Rule Act, *R. S.* 40:48–1," and the ordinance here "cannot be struck down on the theory that it was a perversion of power aimed at plaintiff alone," and if it is "otherwise a valid exercise of power, the financial impact upon plaintiff is an unfortunate consequence for which there is no legal remedy," yet the ordinance transgresses "a controlling policy with respect to Sunday closing" laid down in *N. J. S.* 2*A*:171–1 *et seq.*, "and, additionally, in the light of the said policy, the ordinance is an unreasonable exercise of the delegated power, * * *."

Responding to defendant's contention that the ordinance "does not affirmatively authorize any prohibited activities but rather proscribes certain activities equally prohibited by the statute," and "hence there is no conflict with the state law," citing *Sherman v. City of Paterson*, 82 *N. J. L.* 345 (*Sup. Ct.* 1912); *Fennan v. Atlantic City*, 88 *N. J. L.* 435 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 694 (*E. & A.* 1917); *Schachter v. Hauenstein*, 92 *N. J. L.* 104 (*Sup. Ct.* 1918); *Schumacker v. Township of Little Falls*, 92 *N. J. L.* 106 (*Sup. Ct.* 1918); *Mazzarelli v. City of Elizabeth*, 11 *N. J. Misc.* 150 (*Sup. Ct.* 1933); *Richman v. Board of Commissioners of City of Newark*, 122 *N. J. L.* 180 (*Sup. Ct.* 1939), the Superior Court said that in *Sherman* the "court found compatibility on the thesis that the municipality may have concluded the penalties of the state law were inadequate to accomplish closing in the limited area and hence did not evince a purpose to select some for closing with the intent that others be permitted to operate" and the later cited cases "follow[ed] the same approach, emphasizing that the ordinance was in aid of the state statute," and "no departure from state policy" was "in fact intended," while here "it would be more 'fanciful than real' to say that the Village

sought merely to implement the state policy," and the "ordinance itself and the testimony unmistakably show a purpose to adopt a policy distinctly different from the State's." In answer to the argument that "since this ordinance is more comprehensive in its coverage than the ordinances sustained in the cases cited above, the absence of violation of or incompatibility with state policy should be all the more evident," the court said that "the reverse is true; that the very comprehensiveness of the ordinance suggests that the purpose was not to further the state policy but rather to adopt an approach to the subject matter different from that which the State has ordained shall be the policy within all of the municipalities of the State."

The opinion continues to describe sections 1 and 2 of the ordinance as "prohibitory in phraseology"; section 3 is said to be "phrased in terms of an exclusion from the operative provision of sections 1 and 2, but in fact section 3 does not accomplish any exception but one, namely, the exclusion from the prior prohibition of the delivery of cut flowers or floral arrangements purchased at retail prior to Sunday"; "None of the other operations specified in section 3," it is affirmed, "appear in any way to be proscribed by sections 1 or 2," and "section 3 thus appears to be intended to assure the merchants and inhabitants that those Sunday operations which had theretofore operated, including those which violated the state law, would not be disturbed, and hence, in a real sense, constitutes an 'invitation' to continue those activities," indeed "other activities beyond those set forth in section 3 which are not restrained by the ordinance."

And the cited cases were distinguished as involving ordinances "prohibiting some specific calling"; there, it was suggested, "the prohibitions were addressed to activities which were in fact conducted on Sunday, ostensibly to assure closing by adding to the penalty of the state law," while "here, on the contrary, the ordinance (except for washing automobiles and the limited other restrictions described above) actually undertakes *to prohibit operations which in fact had regularly been closed and hence were not violating*

*the state law, and to exclude from prohibition, either expressly or by omission, those operations which in fact were regularly conducted on Sunday, all without reference to the terms of the state statute."*

The deletion of the penalty provision from the state statute, it was held, "does not remove the incompatibility between the ordinance and the statute"; "If anything, it serves further to demonstrate it, because, whereas in the earlier cases in which limited ordinances were upheld, it could be assumed that activities not within the ordinance would continue to be closed because of the state penalty, that same assumption would now be 'fanciful.' "

And the ordinance was deemed "unreasonable" as seeking "to set up a local policy inconsistent with a statewide policy declared by the Legislature * * *"; "Far from hitting the evil where it was felt most, the ordinance (except for washing automobiles) in fact hit the evil where it was felt least or was totally nonexistent and omitted to hit the evil where it should have been felt most in the light of the state law."

In fine, the conclusion was that "the Legislature had no difficulty in dealing with the evil by a single all-embracing formula, free of differentiation on the basis of degrees of harm," and there is "no reason why a municipality should have any difficulty in following that approach, and * * * it is bound so to do, so long as the state law remains as it is."

The opinion of this Court holds that while the ordinance "contains a more comprehensive list of specific activities that are prohibited on Sunday than did the Woodbridge ordinance * * * considered" in *Auto-Rite, supra,* "the legislative pronouncement in *N. J. S.* 2A:171-1 requires nothing less than a general prohibition with exceptions accorded only to works of necessity and charity," save as otherwise modified by other enactments *in pari materia* cited in the opinion; and the "fundamental error in approach is not remedied by a showing that activities not within the prohibition, by voluntary choice of the parties responsible, are not engaging in Sunday operations."

For the reasons given in the dissenting opinion in *Auto-Rite,* I am not in accord with this assessment of the legislative intent and purpose. I submit that it is unreal to hold that in *Sherman* the ordinance "was in aid of the State statute," and "no departure from State policy," while the much more comprehensive South Orange ordinance is not designed to "implement the State policy," but to serve "a policy distinctly different from the State's," and its "very comprehensiveness" suggests a purpose "not to further the State policy," but rather an "approach to the subject matter different from that which the State has ordained shall be the policy within all the municipalities of the State," which "constitutes an 'invitation' to Sunday operations" in violation of "the state law." And it is not significant in this regard that the ordinance "undertakes to prohibit operations which in fact had regularly been closed and hence were not violating the State law." There is no perceivable reason in principle or policy why the local legislative power should be confined to the outlawing of existing violations of the State law; that would be contrary to accepted legislative practice.

As said in the *Auto-Rite* dissent, if the municipalities had the power to increase the nominal penalty laid down by the preexisting statute, in aid of the enforcement of the State policy, related to particular local needs, then the very same principle *a fortiori* obtains now, when the state-prescribed penalties have been abrogated and enforcement of the policy relegated to the local authorities. There can be no question that such was the legislative purpose. Judge Clapp's exegetical foreword to *Title 2A* leaves no doubt of this. It cannot reasonably be presumed, from the course taken here, that the Legislature intended to strip the municipalities of the police power so long exercised in aid of the fulfillment of the reiterated state mandate for Sunday observance,—to impose this undue limitation upon the time-honored basic legislative principle of "home rule" in matters affecting the public welfare. Doubtless, the Legislature had in mind the shortcomings of a general penalty as a means of satisfying local needs, and the practical difficulty of defining "works of

necessity and charity" in the context of varying local requirements. But whatever the reason, this view of the essential intent and purpose of the statute is clear and compelling; there is no conceivable ground *contra*.

As Chief Justice Vanderbilt said in *Fred v. Mayor and Council of Borough of Tappan*, 10 *N. J.* 515 (1952), the broad police power granted by *R. S.* 40:48–2 is subject "only to the limitation" that the action taken is not "prohibited by or inconsistent with the Constitution or other statutes."

In addition to *Sherman*, we have *Fennan v. City of Atlantic City, supra*, where the ordinance forbade certain specified amusements on Sunday but excepted others; *Schachter v. Hauenstein, supra*, involving an ordinance banning Sunday store-sales of enumerated goods; *Schumacker v. Township of Little Falls, supra*, barring the operation on Sunday of "any merry-go-round or carousel, swings or scups" for gain, or the operation of "any dancing hall or pavilion"; *Mazzarelli v. City of Elizabeth, supra*, where the ordinance imposed an added penalty for local infringement; and *Richman v. Board of Commissioners of City of Newark, supra*, where the ordinance prohibited the sale of groceries on Sunday after 1 P. M., and the holding was that "the ordinance might have included all the hours of the day and also all merchandise, but the failure to do so does not invalidate it nor make lawful the sale of groceries during the hours before one P. M.," and it could not be said that this specific prohibition of the sale of groceries constituted an "invitation," "expressly or by implication," to make sale of other merchandise forbidden by the State law on Sunday.

*N. J. S.* 2A:171–1 is necessarily to be assayed for quality and range in the context of this history of the prior act and its long-accepted judicial interpretation.

There is no manifestation here of an intention to modify the local police power; quite the contrary.

To iterate the dissenting view expressed in *Auto-Rite*, the ordinance here is not in "conflict" with the state statute;

it does not "impliedly grant permission" to transgress that act; and the judicial power may not be invoked in aid of the plaintiff's avowed objective to flout the state law.

I would reverse the judgment.

*For affirmance*—Justices OLIPHANT, BURLING and FRANCIS —3.

*For reversal*—Justices HEHER and WACHENFELD—2.